UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
*ex rel.* BEN BANE

      Plaintiff,

v.                            Case No.  8:06-cv-40-T-33MAP

BREATHE EASY PULMONARY
SERVICES, INC. et al.,

      Defendants.
_____/

**<ins>ORDER</ins>**

This matter comes before the Court pursuant to Lincare's Motion for Summary Judgment (Doc. # 199), and Breathe Easy Pulmonary Services, Inc.'s and Premier Cardio Pulmonary Medical, Inc.'s Motion for Summary Judgment (Doc. # 201), both filed on November 3, 2008. Relator Ben Bane filed responses thereto (Doc. ## 209, 210) on November 26, 2008. For the reasons stated below, Lincare's motion for summary judgment is due to be granted and Breathe Easy/Premier's motion for summary judgment is due to be denied.

**I.  Background**

On July 24, 2007, Bane filed his Second Amended Complaint (Doc. # 35) against Breathe Easy Pulmonary Services, Inc., and Premier Cardio Pulmonary Medical, Inc., (collectively "Breathe Easy"), along with Lincare Holdings, Inc, and Lincare, Inc. (collectively "Lincare"), seeking to recover damages and civil

penalties pursuant to the Federal Civil False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et seq. The United States has declined to intervene in this qui tam action. (Doc. # 2.) Bane alleges that Lincare, a durable medical equipment company (DME), conspired with Breathe Easy, two independent diagnostic testing facilities (IDTFs), and other IDTFs around the country to submit fraudulent claims for payment to Medicare for medically unnecessary and redundant additional services performed in conjunction with pulse oximetry testing.

Lincare is a national provider of oxygen and other home respiratory services. (Doc. # 1 at ¶ 9.) Breathe Easy, a Medicare-approved IDTF and state licensed health care clinic, offers a variety of diagnostic testing including oximetry testing to qualify Medicare recipients for oxygen-related durable medical equipment. (Doc. # 201 at 4.) Kimberly Johns is the president and owner of both Breathe Easy entities. (Doc. # 35 at ¶ 10.)

Bane has worked in the industry for many years, both as an employee of another DME and as an owner of his own DMEs performing services similar to Lincare's. (Id. at ¶¶ 13-15.) During his years as owner of a DME, Bane communicated with Breathe Easy and other IDTFs relating to their provision of pulse oximetry testing to his clients. (Id. at ¶ 16.) In addition, Bane allegedly entered into negotiations in 2004 for Lincare to purchase his DME. (Id. at ¶ 19.) Based on his discussions with employees of Breathe

Easy and Lincare during the period from 2000 to 2004, Bane contends that he observed "suspicious circumstances" surrounding Lincare's relationship with Breathe Easy and other IDTFs. (Id. at ¶¶ 16-21.) Thereafter, Bane began independently investigating Lincare's procedures in referring its clients to IDTFs such as Breathe Easy. (Id. at ¶¶ 21-23.) Based on his experience in the industry, his prior dealings with Lincare and Breathe Easy, and information gained during his investigation, Bane asserts to have direct and independent knowledge of the facts giving rise to this qui tam action. (Id. at ¶ 24.)

According to Bane, Defendants' scheme to submit fraudulent Medicare claims was accomplished as follows. A physician, believing that his patient's health condition required in-home oxygen therapy, would contact Lincare to supply the oxygen and necessary equipment.[1] Medicare will not pay providers like Lincare for oxygen unless qualifying scores on oximetry tests have been obtained on the patients by an independent lab such as Breathe Easy. (Doc. # 209 at 3.) Therefore, Lincare would often refer the physician to an IDTF to perform the qualifying tests. If Breathe Easy was the referral IDTF, Lincare would provide the physician with an "Oxygen Assessment Referral Form" or "Pulmonary Compliance

_____

[1] Pulse oximetry is used to assess an individual's respiratory status by determining the oxygen saturation of arterial blood. A pulse oximeter measures blood oxygenation by passing light waves through a patient's skin. (Doc. # 35 at ¶ 26.)

3

Order Form" and instruct the physician to fill out the form, sign it, and return it to Breathe Easy.[2] (Id. at 3-4; Doc. ## 11-2, 11-3) These order forms authorized Breathe Easy to perform certain tests and provided supporting documentation for Breathe Easy's subsequent submission of claims to Medicare for payment for the tests.

Relator alleges that the order forms, which were created by Breathe Easy, were intentionally designed to authorize Breathe Easy to do a comprehensive pulmonary diagnostic exam (hereafter "diagnostic exam") even though the physician completing the form believed he was ordering a simple oximetry test.[3] (Doc. # 35 at ¶¶ 27-29.) Breathe Easy used multiple versions of its order form.[4]

---

[2] Bane asserts that, because Lincare desires to get the oximetry tests done quickly so it can start billing for oxygen and Breathe Easy normally has a fast response time, Lincare contacts Breathe Easy to do the testing. (Doc. # 210 at 7.)

[3] The diagnostic exam, on some forms referred to as an "oxygen assessment referral," provides "a detailed profile of respiratory function in the recipient's everyday home environment" and includes "overnight oximetry, rest & exercise oximetry, and clinical evaluation" by a nurse practitioner. (Doc. ## 37-3; 201 at 4-5.) The diagnostic exam is not required to pre-qualify a patient for oxygen therapy under Medicare. (Doc. # 210 at 3, 7.)

[4] One version allows the physician to choose from one of several testing options, but "overnight oximetry" is not listed. (See Sealed Doc. # S-11, Composite Ex. 1, 2.) Another version does not designate testing options but indicates in reduced print midway down the page, "O2 assessment referral (includes overnight oximetry, rest & exercise oximetry and clinical evaluation)." (Id.) A third has a one-line description of the diagnostic exam with a small box next to it, which Breathe Easy asserts is only a bullet point, not a box to be checked. (Id.; Doc. # 210-2, Johns Dep. at 37:11-38:13.)

(See Sealed Doc. # S-11, Composite Ex. 1, 2.) They all allowed the physician to indicate by checking a box whether the purpose of the exam was to "pre-qualify," "post-qualify," or "re-qualify" the patient for oxygen therapy. (Id.) One version of the form lists specific testing options and others refer only to the diagnostic exam. (Id.) None of the forms list oximetry as a testing option. (Id.) According to Breathe Easy, their services automatically include a diagnostic exam unless the physician specifically instructs Breathe Easy not to do the diagnostic exam. (Doc. # 210-2, Johns Dep. at 94:18-96-15.)

Bane asserts that Lincare participated in this deception by hand delivering the order form to the physician and directing her to sign the form, or by partially filling out the order form to authorize the diagnostic exam before forwarding it for the physician's signature. (Doc. # 35 at ¶ 27.) In other instances, it is alleged that Lincare forwarded unsigned order forms to Breathe Easy along with prescriptions signed by the physician that ordered only a pulse oximetry test. (Doc. # 210 at 15-16.)

According to Bane, upon receiving the completed order form from Lincare, Breathe Easy would then send a nurse practitioner to the patient's home to perform the diagnostic exam and oximetry. (Doc. # 35 at ¶¶ 27-28.) Breathe Easy asserts that it sent the test results to the physician, but Relator alleges that the results were sent to Lincare, who only forwarded the oximetry results to

the physician.  (<u>Id.</u> at ¶ 30.)  The physician then signed a certificate of medical necessity that permitted Lincare to bill Medicare for the oxygen.  (<u>Id.</u>)  Meanwhile, Breathe Easy submitted a claim to Medicare for the more expensive diagnostic exam.[5]

Bane asserts that since at least 2000, and continuing up to the date that this suit was filed, numerous claims for these diagnostic exams have been fraudulently submitted to and paid by Medicare.  (<u>Id.</u> at ¶ 32.)  According to Bane, the claims are fraudulent because the diagnostic exams were not authorized by the physicians, the results were not provided to the physicians, and the evaluations were not medically necessary because the physicians already performed their own patient assessments before contacting Lincare for oxygen therapy.  (<u>Id.</u> at ¶ 29.)  Bane further alleges that Lincare participated in the fraudulent submissions by obtaining physicians' signatures on referral forms or forwarding unsigned forms with prescriptions for oximetry testing only, knowing that Breathe Easy was going to perform the unauthorized and medically unnecessary diagnostic exam.  (<u>Id.</u> at ¶¶ 27-28, 30.)

Bane brought suit alleging violations of § 3729(a) of the FCA based on Breathe Easy and Lincare's (1) claims for medically unnecessary and redundant services performed in conjunction with pulse oximetry testing, and (2) violation of the Anti-Kickback Act,

_____

[5] According to Bane, the Medicare reimbursement rate for a diagnostic exam is approximately $115, while the reimbursement for a pulse oximetry is approximately $17.  (Doc. # 35 at ¶ 31.)

42 U.S.C. § 1320a-7b. (Id. at ¶¶ 46-61.) Count II of the Second Amended Complaint for violation of the Anti-kickback Act was dismissed on February 5, 2008. (Doc. # 86.) As to the remaining count, Bane seeks damages on behalf of the Government of triple the loss to Medicare and civil penalties of between $5,500 and $11,000 for each violation, as well as a share of the recovery on his own behalf of the maximum amount allowed under 31 U.S.C. § 3730(d).

Breathe Easy and Lincare have both filed motions for summary judgment, arguing that Relator's claims under the FCA must fail because Relator has offered no evidence that Defendants presented or caused to be presented a specific false claim to Medicare or that they made or used a false statement or record to get a fraudulent claim paid by Medicare, nor has he shown that Breathe Easy and Lincare had a conspiratorial agreement to defraud the Government. (Doc. ## 199 at 16-24; 201 at 14-17.) In addition, Lincare asserts that Defendant Lincare Holdings Inc., as a holding company that provides no services or products and does not bill Medicare, cannot have engaged in conduct that violated the FCA. (Doc. # 199 at 24.) The Court will consider each of these motions in turn.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

**III. The False Claims Act (FCA)**

An entity is liable for civil penalties under the FCA if it "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," or if it "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729(a)(1)-(2) (2006).  In addition, liability arises where a person "[c]onspires to defraud the Government by getting a false or fraudulent claim paid or

9

approved." 31 U.S.C. § 3729(a)(3).  Statutory penalties include a civil penalty ranging from $5,000 to $10,000 per claim and treble damages.  § 3729(a).

The purpose of the FCA is to encourage private persons to come forward with information if they learn that fraud is being perpetrated against the Government.  <u>Ragsdale v. Rubbermaid, Inc.</u>, 193 F.3d 1235, 1237 n. 1 (11th Cir. 1999).  A person may bring a civil action under the FCA on behalf of the Government (a <u>qui tam</u> action), however "[t]he alleged impropriety may not be the subject of a pending Government action or publicly disclosed information of which the accuser does not have direct and independent knowledge." <u>U.S. ex rel. Clausen v. Lab. Corp. Am.</u>, 290 F.3d 1301, 1307 (11th Cir. 2002); 31 U.S.C. § 3730(b), (e).  If the Government chooses not to exercise its statutory right to take over the suit, as is the case here, the Relator can recover between 25% and 30% of any funds recovered, plus reasonable attorney's fees and costs.  31 U.S.C. § 3730(d)(2).

"The act of submitting a fraudulent claim to the Government is the '<u>sine qua non</u> of a False Claims Act violation.'" <u>Corsello v. Lincare, Inc.</u>, 428 F.3d 1008, 1012 (11th Cir. 2005) (quoting <u>Clausen</u>, 290 F.3d at 1311).  In the healthcare context, liability does not arise from a healthcare provider's disregard of Government regulations or failure to maintain proper internal policies unless those acts allow the provider to knowingly ask the Government to

pay amounts it does not owe.  Clausen, 290 F.3d at 1311.

**IV.  Breathe Easy's Liability under the FCA**

    **A.  Section 3729(a)(1)**

In order to establish a violation of the FCA, Relator must establish the following three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false."  United States ex rel. Walker v. R & F Props. of Lake County, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005); 31 U.S.C. § 3729(a)(1)-(2).  "Knowingly" means that a person "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required."  § 3729(b).

Breathe Easy asserts that Relator has not established the existence of a single false claim because there is no testimony by any physician regarding a specific test on a specific patient that was unauthorized, unnecessary, or redundant.  (Doc. # 201 at 13.) In addition, because the Breathe Easy order forms were not themselves submitted to the Government, Breathe Easy contends that it did not present a false claim.  (Id. at 12.)  Finally, it is argued that Breathe Easy did not knowingly submit a false claim because reasonable minds could differ as to whether the diagnostic

exams were properly billed to the Government.  (Id. at 12-13.)

The Court finds that Relator has raised a genuine issue of
material fact as to the existence of false Medicare claims.
Relator has identified and submitted proof of numerous claims for
pulmonary diagnostic exams that were paid by Medicare on behalf of
patients whose physicians submitted prescriptions ordering only
pulse oximetry tests.  (Doc. # 209 at 15-16; Sealed Doc. S-11)
Composite Exhibits 1 and 2, filed under seal with Relator's
opposition memorandum, contain unsigned Breathe Easy order forms
and prescriptions signed by the patients' physicians requesting
only oximetry testing for over 100 individuals.[6]  For each of these
patients, Relator also provides written results of pulmonary
diagnostic exams performed by Breathe Easy employees and
documentation of Medicare payment for the diagnostic exams.[7]

Some of the Breathe Easy order forms for these patients
indicate "V.O. [(verbal order)] received from Dr.'s office, Dr. is
aware of referral to Breathe Easy."  Breathe Easy argues that a

_____

[6] Although oximetry testing is the only procedure ordered on
the prescriptions, the language used and the type of oximtery
requested varies.    For example, many prescriptions specify
overnight oximetry, while others request oximetry at rest and with
activity.    However, the Court's review of the materials did not
reveal any prescriptions that requested diagnostic exams.

[7] Breathe Easy states that the diagnostic exams are billed to
Medicare under Current Procedural Terminolgy ("CPT") code numbers
ranging from 99241 to 99245.  (Doc. # 201 at 5.)  Relator obtained
Medicare payment data from First Coast Service Options, Florida's
Medicare carrier, which reflects charges for these same patients
for CPT codes falling within these numbers.

written physician order is not required to authorize an IDTF such as Breathe Easy to perform a test, implying that physicians in this case verbally requested the diagnostic tests that were performed by Breathe Easy. (Doc. # 201 at 8.) In support of this assertion, Breathe Easy refers to the Local Coverage Determination ("LCD") for IDTFs that was issued to Florida's Medicare Carrier by the Centers for Medicare and Medicaid Services ("CMS") and which determines whether a service is reasonable and necessary. (Id.)

> LCD number L26304 provides that
>
> All procedures performed by the IDTF must be specifically ordered in writing by the physician who is treating the beneficiary, or a non-physician practitioner, nurse practitioner, clinical nurse specialist, or physician assistant . . . who furnishes . . . a consultation or treats a beneficiary for a specific medical problem and who uses the results of a diagnostic test in the management of the beneficiary's specific medical problem . . . .

(Doc. # 201-18 at 4-5.) Although L26304 permits physician orders to be received by telephone or email, those orders must be documented in the patient's records kept by both the physician and the IDTF and "the IDTF must obtain an order that is written, dated, and signed by the treating physician before a claim is submitted for the service." (Id. at 5.) Thus, where a verbal order is indicated, the burden is on Breathe Easy to provide proof that a written doctor's order for a diagnostic test was received prior to the claim being submitted to Medicare.

Some of the order forms submitted by Relator have a check in

the box indicating a diagnostic exam, however, those order forms are not signed by the physician and the accompanying prescription that is signed by the physician clearly does not order such an exam. Further, many of the order forms specifically reference the directive set forth in the accompanying prescription through language such as "see attached prescription." Claims are "false" if they are submitted in violation of a controlling rule, regulation or standard. See <u>United States v. Southland Mgmt. Corp.</u>, 326 F.3d 669, 674 (5th Cir. 2003) (providing that "[w]hether a claim is valid depends on the contract, regulation, or statute that supposedly warrants it"). In this case, Breath Easy has not complied with Medicare's requirement that the test be <u>specifically</u> ordered in writing by the physician. Thus, Relator has provided enough evidence of false claims to survive summary judgment on this issue.

The Composite Exhibits also create a genuine issue as to whether Breathe Easy "presented" false claims for unauthorized diagnostic tests to Medicare. Data provided by First Coast, Florida's Medicare carrier, evidences payment by Medicare for diagnostic tests or other pulmonary testing that were not reflected on the prescriptions submitted by the physician. Thus, there is compelling evidence that Breathe Easy presented false claims to the Government.

Finally, Relator has met his burden in showing that Breathe

Easy "knowingly" presented the false claims to Medicare. Breathe Easy itself pointed to the language of LCD number L26304, which sets forth the requirement that IDTFs submit claims only for those procedures that were specifically ordered by a beneficiary's treating physician. (Doc. # 201 at 8.) Thus, Breathe Easy submitted claims knowing that they were required to have documentation of written physicians' authorization for each test. In addition, the order forms and prescriptions that are contained in the Composite Exhibits, many of which bear the fax number of Breathe Easy and stamps indicating the dates the orders were received and paid, represent sufficient evidence that Breathe Easy had reviewed these documents before submitting the claims to Medicare. Therefore, Breathe Easy is not entitled to summary judgment on Relator's claims under § 3729(a)(1).

**B.   Section 3729(a)(2)**

Breathe Easy is also subject to liability under § 3729(a)(2) if it knowingly made, used, or caused to be made or used, a false record or statement to get a claim for unauthorized tests paid by Medicare. Breathe Easy argues that liability under § 3729(a)(2) cannot be established because there is no direct link between its order forms, which have been characterized as misleading by Relator, and reimbursement by Medicare. (Doc. # 201 at 16.) Under Allison Engine Co., Inc. v. United States ex rel. Sanders, 128 S.Ct. 2123, 2130 (2008), if an entity does not intend the

Government to "rely on the false statement as a condition of payment," then there is not a direct link between the false statement and the loss to the Government to support liability under § 3729(a)(2).

Breathe Easy's argument is misplaced, however, because it is the claim for reimbursement to Medicare that constitutes the false statement in this case, not the order form. The claim for reimbursement, which Breathe Easy knew was contingent upon receipt of written authorization by the patient's physician, was a false statement directly linked to the Government's decision to pay for the diagnostic tests. Thus, there is a genuine issue of material fact as to Breathe Easy's liability under § 3729(a)(2).

C. **Section 3729(a)(3)**

Relator also brings suit under § 3729(a)(3), alleging that Breathe Easy conspired with Lincare to defraud the Government by getting unauthorized services paid or approved by Medicare. Relator sets forth an elaborate scheme whereby Lincare knowingly aided Breathe Easy in getting the unnecessary and unauthorized pulmonary diagnostic tests submitted and paid by Medicare for the sole purpose of getting patients qualified for Medicare-reimbursed oxygen more quickly. According to Relator, Lincare participated by forwarding Breathe Easy order forms, often partially filled out by Lincare employees, to physicians who contacted Lincare to initiate oxygen therapy on their patients. Lincare then allegedly forwarded

the completed forms to Breathe Easy with knowledge that Breathe Easy was going to perform diagnostic tests or other procedures that the physicians did not want done.

To establish liability under § 3729(a)(3), a Relator must establish "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States, and (2) that one or more conspirators performed any act to get a false or fraudulent claim allowed or paid." United States v. Hill, 676 F. Supp. 1158, 1173 (N.D. Fla. 1987). There must be proof of an agreement, a "meeting of the minds," between the alleged conspirators to achieve the unlawful purpose. United States ex rel. Durcholz v. FKW, Inc., 189 F.3d 542, 545-46 (7th Cir. 1999). The Supreme Court has explained that liability for conspiracy under the FCA requires proof "that the conspirators intended 'to defraud the Government.'" Allison Engine, 128 S.Ct. at 2130.

The Court finds that Relator has failed to present sufficient evidence of a conspiratorial agreement between Lincare and Breathe Easy for the purpose of defrauding the Government. See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co., 721 F. Supp. 1247, 1259 (S.D. Fla. 1989) (providing that "[t]he essence of a conspiracy under the [FCA] is an agreement between two or more persons to commit a fraud"). While circumstantial evidence of a conspiracy may be

enough to withstand summary judgment, the evidence must reasonably support an inference that Lincare shared Breathe Easy's conspiratorial objective. <u>Durcholz</u>, 189 F.3d at 545-46 (affirming summary judgment where Relator's evidence "did not tend to show that [one defendant] shared [the other defendant's] conspiratorial motive").

First, Relator has not identified what the terms of the alleged agreement were or who entered into that agreement. Relator does not even offer evidence of any direct communications between the two Defendants. He merely asserts that Breathe Easy owner Kim Johns and Breathe Easy Manager Karen Nieto testified that "all of Breathe Easy's referral sources, including Lincare, were aware of Breathe Easy's company protocol or office procedure of doing clinical evaluations on all patients referred for oximetry testing unless the referring physician specifically said not to." (Doc. # 210 at 10.) In addition, Relator states that Johns "informed a Lincare compliance official that Breathe Easy billed Medicare for the home visits its nurse practitioners routinely conducted." (<u>Id.</u>) These vague assertions are certainly not enough to establish the existence of a conspiracy.

The only other evidence Relator offers regarding a conversation between employees of the two entities is the deposition testimony of Lincare Center Manager Tessa Bellfy, who states that she once called Breathe Easy and questioned an

unidentified "representative" about which billing codes were used for clinical evaluations. (Doc. ## 210 at 11-12; 210-2 at 23.) Bellfy's testimony reflects that the Breathe Easy representative gave her the billing codes and told her that "they were approved through Medicare to do that" and that "they send a tech out to do that." (Id.) Bellfy reports that she told her Area Manager Stephanie Woods about the conversation and asked why Breathe Easy was "billing for something that the doctors aren't really ordering," and that Woods responded that Lincare has "no play in what the lab does." (Id. at 23-24.)

Based on only these very limited communications, Relator concludes that the two entities conspired to defraud Medicare. To sustain a claim for conspiracy, a Relator must provide evidence of an agreement and must identify with specificity the individuals who participated in the conspiracy. See United States v. JFK Med. Ctr., Case No. 01-8158-CIV, 2002 WL 31941007 at * 5 (S.D. Fla. 2002) (citing Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985)). Relator has failed to do either.

Although Relator has proffered testimony showing that certain Lincare employees questioned their own managers about Breathe Easy's testing practices, the testimony also reflects that Lincare managers consistently responded to the effect that Lincare and Breathe Easy were separate entities and that Lincare had no control over Breathe Easy's practices. (Doc. # 210 at 11-13.) There is

simply no evidence that there was a meeting of the minds between the Lincare and Breathe Easy entities to submit false Medicare claims.

Nor is there proof of a shared conspiratorial objective. Relator offers evidence that certain Lincare managers were aware of Breathe Easy's policy of doing diagnostic exams on all patients referred for qualifying oximetry testing and that Lincare continued to refer physicians to Breathe Easy in spite of known complaints from doctors about the extra charges. (Id. at 10-14.) Based on Lincare's continued referrals in the face of questions by several of its employees, Relator asserts that such actions "demonstrate[] that both sets of defendants shared the same conspiratorial objective of permitting Breathe Easy/Premier to defraud the Medicare program in return for providing Lincare the fast oximetry testing it needed . . . ." (Id. at 14.) However, this very statement highlights the different objectives of the two entities. As Relator points out, Lincare's objective was to get a quick turn-around on qualifying oximetry tests. (Id. at 3-4, 14.)

Relator has not alleged that Lincare shared in the proceeds from the false claims and the record amply supports an independent and legitimate reason for Lincare's referrals to Breathe Easy. Lincare employees have testified that it became increasingly difficult to get independent laboratories to come out to do oximetry testing for oxygen qualification and that both Breathe

Easy and another IDTF, Life Care Diagnostic, were frequently used. (Doc. ## 210-2 at 5; 210-3 at 21-22.) Employees have also indicated that Lincare would refer to whichever IDTF could "get it done the quickest." (Doc. ## 210-2 at 5; 210-3 at 3.) The record before the Court does not evidence any relationship or shared objective regarding submission of false claims between Lincare and Breathe Easy to suggest some sort of conspiratorial agreement.

Finally, Relator cites to <u>United States ex rel. Long v. SCS Business & Technical Institute</u> for the proposition that Lincare's conduct in allowing the fraud to continue by not preventing Breathe Easy from submitting what it knew were false claims is sufficient to establish a conspiracy under the FCA. 999 F. Supp. 78, 89-90 (D.D.C. 1998), <u>rev'd in part on other grounds</u>, 173 F.3d 870 (D.C. Cir. 1999). In <u>Long</u>, the Relator alleged that New York state officials conspired with SCS, the manager of five proprietary schools in New York, to commit fraudulent acts in order to obtain federal loan funding. <u>Id.</u> at 81. The court held that Relator described New York's participation in the alleged conspiracy, which was based on New York officials' actions to conceal and protect SCS's pervasive fraud, with sufficient particularity to survive a motion to dismiss. <u>Id.</u> at 89-90.

<u>Long</u> is distinguishable from this case, however, because the New York officials in <u>Long</u> had the authority to monitor, investigate and ultimately prevent SCS from engaging in the

fraudulent activity. Id. at 81, 89-90. In addition, New York received a portion of the federal funding that was gained as a result of the alleged fraud and specific New York officials were named as having participated in and benefitted from the conspiracy. Id. at 90. In contrast, Lincare had no authority to investigate or control Breathe Easy's billing practices and it did not receive any of the funds reimbursed by Medicare. In addition, as stated above, Relator has pointed to no individuals who participated in the alleged conspiracy.

Thus, the Court does not find that Relator has raised a genuine issue of material fact as to its claim for conspiracy under § 3729(a)(3). Breathe Easy's summary judgment must be denied, however, because there remain triable issues of fact as to Breathe Easy's liability under § 3729(a)(1) and § 3729(a)(2) of the False Claims Act.

## IV. Lincare's Liability under the FCA

Lincare also seeks summary judgment in its favor as to Realtor's claims under §§ 3729(a)(1)-(3) of the FCA. The Court has already considered the issue of Defendants' conspiracy under § 3729(a)(3) of the Act and concluded that there is insufficient evidence of a conspiracy to survive summary judgment on that claim.

As to liability under § 3729(a)(1), Relator has not alleged that Lincare presented a false claim to the Government. Relator asserts, however, that Lincare "caused" a false claim to be

submitted by presenting Breathe Easy order forms to physicians, directing them to complete the forms, transmitting the forms back to Breathe Easy, and in some cases attaching prescriptions for pulse oximetry to the forms. (Doc. # 210 at 17.)  Because Lincare allegedly knew that Breathe Easy was going to perform more than the oximetry tests ordered on those prescriptions, Relator contends that Lincare is liable for causing the submission of false claims.

However, the element of causation under the FCA requires more than a "broad 'but for' test."  United States v. Hibbs, 568 F.2d 347, 349 (3d Cir. 1977).  The Relator must show that the defendant "knowingly assisted in causing the government to pay claims which were grounded in fraud."  United States v. Mackby, 261 F.3d 821, 828 (9th Cir. 2001) (citing United States ex rel. Marcus v. Hess, 317 U.S. 537, 544-45 (1943)).  Here, there is no evidence that Lincare did anything other than forward completed order forms and prescriptions to Breathe Easy.

Although one Lincare employee, Ann Patrice Rooney, has testified that when a prescription was not received from the physician she would fill out the Breathe Easy order form, check the "complete pulmonary evaluation box," and send it to the physician's office for his signature (Doc. # 210-3 at 44), there is no evidence that she or any other Lincare employee ever made changes to the order forms after they were signed.  Rooney, as well as other Lincare employees, have asserted that they believed that Breathe

Easy was just billing for oximetry tests or whatever test the prescription called for. (Doc. ## 210-2 at 32, 60; 210-3 at 40.)

Because no changes were made to the forms after they were signed by the physician, it was reasonable for Lincare to believe that the physician had read the form before signing and intended to authorize the indicated test. In cases where the form was not signed, Lincare forwarded a signed doctor's prescription specifying the requested tests. Relator has not alleged that any of these actions by Lincare violated any rule or regulation. The Court does not believe that Lincare's conduct related to securing physicians' signatures on order forms and transmitting accurate copies of order forms and prescriptions to Breathe Easy, can be said to have "caused" Breathe Easy to submit fraudulent claims for unnecessary tests.

The link between Lincare's conduct and Breathe Easy's submission of Medicare claims is simply too attenuated to support liability under the causation element alone. See United States ex rel. Drescher v. Highmark, Inc., 305 F. Supp. 2d 451, 460 (E.D. Pa. 2004) (providing that the FCA does not give the government "carte blanche to proceed under the FCA using indirect theories of causation which offer only attenuated links between the parties"). Courts finding liability based on causation have consistently based their holdings on a strong and direct causal link between the

defendant's actions and the submission of the false claim.[8]  Here,

the direct causal link is missing because Lincare had no control

over Breathe Easy's claims procedures, gave no suggestion or

instruction to Breathe Easy regarding its Medicare submissions, and

in no way participated in Breathe Easy's submission of bills to

Medicare.

The only other basis for liability is that Lincare violated §

3729(a)(2) by knowingly making or causing to be made a false record

or statement to get fraudulent claims paid by the Government.

Here, also, Relator has failed to establish the requisite elements

to survive a summary judgment motion.

In <u>Allison Engine</u>, the Supreme Court explained that the

language "to get" in § 3729(a)(2) "denotes purpose, and thus a

person must have the purpose of getting a false or fraudulent claim

'paid or approved by the Government' in order to be liable under §

3729(a)(2)."  128 S.Ct. at 2128.  Further, the false record must be

"material to the government's decision to make the payment sought

---

[8] For example, in <u>United States v. Krizek</u>, 111 F.3d 934, 942 (D.C. Cir 1997), a physician was found liable for causing false claims to be submitted where the physician "delegated to his wife authority to submit claims on his behalf."  In <u>United States v. Thurston</u>, 358 F.3d 51 (1st Cir. 2004), <u>vacated on other grounds</u>, 543 U.S. 1097 (2005), defendant, vice president of the controlling corporation, was found liable for fraudulently billing for medically unnecessary laboratory tests where he specifically instructed his subordinates to bundle the unnecessary test with a commonly ordered panel of tests.  <u>Id.</u> at 56-57, n. 4.  In <u>Mackby</u>, 261 F.3d at 828, the defendant instructed both the clinic's office manager and its Medicare billing service to fraudulently use his father's Medicare PIN number on Medicare claim forms.

in the defendant's claim." <u>U.S. ex rel. SNAPP, Inc. v. Ford Motor</u> <u>Co.</u>, 532 F.3d 496, 505 (6th Cir. 2008).    As the Court has thoroughly explained above in its analysis of the conspiracy claim, Relator has provided no evidence that any of Lincare's actions were taken for the purpose of defrauding the Government.    Further, Relator has pointed to no specific false statement or record that supports liability under this provision.

Relator does argue that the Breathe Easy order form was "material to Medicare as the underlying basis for the medical necessity of the clinical evaluations billed by Breathe Easy" (Doc. # 210 at 19), so the Court will assume that the order forms are alleged to constitute the false statements.    However, this argument also fails because Lincare had no hand in creating the order forms and there is nothing to suggest that Lincare ever entered any information on the order forms that was fraudulent.    There is no proof that Lincare checked the box labeled "verbal order" when in fact no verbal order was received or that it entered any information on the order forms after they were signed by the physicians.

In addition, it is not clear that the Government relied on the Breathe Easy order form as a condition of payment.    The order forms were not submitted to the Government for payment and were not a requirement for payment.    In fact, evidence in the Composite Exhibits submitted by Relator shows that Breathe Easy often

performed tests and billed Medicare on the basis of signed prescriptions. Furthermore, as this Court previously noted, the false statement to the Government was not the order form, as Relator is contending, but rather the Medicare claim that Breathe Easy submitted to the Government.

Thus, because Relator has failed to raise a genuine issue of material fact as to Lincare's liability under § 3729(a)(1), § 3729(a)(2), or § 3729(a)(3), Lincare's motion for summary judgment is due to be granted.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Breathe Easy Pulmonary Services, Inc.'s and Premier Cardio Pulmonary Medical, Inc.'s Motion for Summary Judgment (Doc. # 201) is **DENIED.**

(2) Lincare's Motion for Summary Judgment (Doc. # 199) is **GRANTED.**

(3) The Clerk is directed to terminate any pending motions and deadlines relating to Defendants Lincare Holdings, Inc. and Lincare, Inc., and dismiss them from the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>23rd</u> day of January 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record