UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
*ex rel.* BEN BANE,

        Plaintiffs,

v.                                     Case No. 8:06-CV-00040-T-33MAP

BREATHE EASY PULMONARY
SERVICES, INC.; PREMIER CARDIO
PULMONARY MEDICAL, INC.;
LINCARE HOLDINGS INC.; and
LINCARE INC.,
        Defendants.

_____/

## LINCARE'S MOTION FOR DETERMINATION OF ENTITLEMENT TO ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW

Defendants Lincare Holdings Inc. and Lincare Inc. (collectively "Lincare"), by and through the undersigned counsel and pursuant to 31 U.S.C. § 3730(d)(4), Federal Rule of Civil Procedure 54, Local Rule 4.18, this Court's Order dated February 2, 2009 (Dkt. 276) and the Final Judgment entered on February 3, 2009 (Dkt. 277), hereby move this Court for an Order: a) declaring that Lincare is entitled to recover for the attorneys' fees and non-taxable expenses incurred in its defense of the instant lawsuit brought by Relator, Ben Bane ("Relator"); b) directing a timetable for the submission of documentary evidence supporting the appropriate amount of such award of fees and nontaxable expenses; and c) scheduling an

evidentiary hearing on the amount of such award, pursuant to Rule 54(d)(2)(C).[1]  In support of its Motion, Lincare states:

## I.    INTRODUCTION

Lincare is entitled to an award of attorneys' fees and nontaxable expenses against Relator pursuant to §3730(d)(4) because Relator's claims against Lincare were frivolous, clearly vexatious, and brought primarily for the purpose of harassment.

### A.    Relevant Procedural Background.

On January 6, 2006, Relator filed the instant lawsuit against Lincare and co-defendants Breathe Easy Pulmonary Services, Inc. and Premier Cardio Pulmonary Medical, Inc. (collectively "Breathe Easy") (Dkt. 1).   After reviewing Relator's evidence and investigating the matter, the Government declined to intervene.  (Dkt. 2).  Lincare moved to dismiss Relator's claims twice for failing to plead his case with sufficient particularity under Rule 9(b).  In response, Relator amended his complaint twice.  (Dkt. 8, 11, 25, and 35).  On July 24, 2007, Relator filed his Second Amended Complaint ("SAC") (Dkt. 35).  Following a November 1, 2007 hearing on Defendants' Motions to Dismiss, Magistrate Judge Pizzo issued a Report and Recommendation ("R&R") on November 30, 2007 (Dkt. 65).   On February 5, 2008, the Court declined to adopt the R&R in full and dismissed Count II from the SAC.  (Dkt. 86).  The Court adopted the R&R with respect to Count I and Lincare answered the Count and asserted multiple affirmative defenses (Dkt. 91).

Over the next four months, the parties engaged in extensive discovery.   Lincare served and responded to substantial written discovery and produced and received thousands

---

[1] Rule 54(d)(2)(C) provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."

of documents. Lincare also participated in forty-one depositions before the close of discovery on July 1, 2008. Discovery revealed Relator's allegations of conspiracy and fraud against Lincare had no evidentiary support. In fact, the witness testimony and documentary evidence obtained during discovery affirmatively *negated* the allegations made by Relator in the SAC. Despite the overwhelming evidence contradicting his claims against Lincare and demonstrating such claims to be meritless, Relator pressed on with his lawsuit.

### B. Lincare Prevailed and Obtained a Final Judgment in Its Favor.

On November 3, 2008, Lincare filed a Motion for Summary Judgment (Dkt. 199), arguing that Lincare was entitled to judgment as a matter of law on the only remaining count alleged by Relator in the SAC. This Court granted Lincare's Motion for Summary Judgment (Dkt. 271) (the "Order") on January 23, 2009. The Court held that Relator failed to "raise a genuine issue of material fact as to Lincare's liability under §3729(a)(1), §3729(a)(2), and §3729(a)(3)." Order at 27 (Jan. 23, 2009).[2] Lincare obtained a judgment in its favor on both counts of the Relator's SAC. Accordingly, Lincare is a "prevailing party" under the FCA in this case.

In the same Order, the Court denied the Motion for Summary Judgment filed by Breathe Easy. Almost immediately after the Court granted Lincare's motion and denied

---

[2]The Court found no merit to any of Relator's claims against Lincare in the SAC. With regard to Relator's conspiracy claim the Court found that there was "*simply no evidence*" of a "meeting of the minds between the Lincare and Breathe Easy entities to submit false Medicare claims". Order at 19-20 (emphasis added). The Court also determined there was no "proof of a shared conspiratorial objective." Order at 19-20. With regard to Relator's claim that Lincare "caused" a false claim to be submitted, the Court found "[t]he link between Lincare's conduct and Breathe Easy's submission of Medicare claims is *simply too attenuated* to support liability under the causation element alone." Order at 24 (emphasis added). With regard to Relator's claim that Lincare created a false record or statement with the intent that the Government pay a false claim, the Court found that "Relator has pointed to *no specific false statement or record* that supports liability under this provision." Order at 26 (emphasis added).

Breathe Easy's motion, Relator filed a Motion to Dismiss his claims against Breathe Easy. (Dkt. 272).

On February 2, 2009, this Court granted Lincare's Motion for Final Judgment and directed the clerk to enter a final judgment. (Dkt. 276).[3] On February 3, 2009, the clerk entered a Final Judgment. (Dkt. 277). Therefore, the instant Motion for Determination of Entitlement to Attorneys' Fees is ripe for adjudication at this time.

### C. Other Relevant Background.

Just three months after filing the instant action, Relator filed a second *qui tam* action against Lincare with nearly identical allegations, styled *United States ex rel. Ben Bane v. Lincare Holdings, Inc., et al.*, Case No. 8:06-CV-0467-T-24EAJ ("*Life Care*") (*Life Care* Dkt. 1). Once again, after investigating Relator's allegations, the Government declined to intervene (*Life Care* Dkt. 2). Ultimately, Judge Bucklew concluded that the Court lacked subject matter jurisdiction by application of §3730(b)(5)'s first-to-file bar and dismissed Relator's claims against Lincare. Order (June 25, 2008) (*Life Care* Dkt. 91).[4]

Relator owned and operated an oxygen supply company, Bane Medical Services, Inc. ("BMS"), until he sold the company's business to Lincare on December 20, 2004. Bane Dep. 5:25-6:16 (June 19, 2008), Ex. A. On January 11, 2005, the FBI raided the former BMS centers that Lincare had just purchased. Elston Dep. 58:21-59:4 (June 26, 2008), Ex. E; Bane Dep. 256:8-15, Ex. A. The FBI raid was part of its investigation of activities at BMS that occurred prior to the Lincare acquisition (when Relator still operated BMS). Bane

---

[3] In the same order the Court granted Relator's Motion to Dismiss Breathe Easy.
[4] Subsequently, Judge Covington dismissed the claims against co-defendant Life Care Diagnostics on the same grounds. Order (November 11, 2008)(*Life Care* Dkt. 101).

Dep. 47:18-48:10, Ex. A. Bane testified that the FBI's focus was solely on him and his company. Immediately after the FBI raid, Lincare attempted to rescind the deal but Relator refused. Bane Dep. 45:16-46:2, Ex. A.

A contractual dispute arose and the Relator filed a contract action against Lincare, which is still pending in the Thirteenth Judicial Circuit, and is styled *Bane, et al. v. Lincare Inc.*, Case No. 07-005783, Division L, in Hillsborough County, Florida (the "Contract Action"). Bane Dep. 247:9-248:4, Ex. A. In the Contract Action, Relator seeks to recover an additional $2 million holdback payment on top of the $19 million dollars Lincare already paid Relator pursuant to the parties' contract. Lincare filed a counterclaim in the Contract Action seeking, *inter alia*, damages related to the FBI raid and Relator's misrepresentations.

### D.  Approximate Amount of Attorneys' Fees Sought.

In accordance with Federal Rule of Civil Procedure 54(d)(2)(B),[5] Lincare provides notice that it is seeking approximately $800,000.00, which represents a fair estimate of the attorneys' fees expended in defending against Relator's claims through January 31, 2009. In addition, Lincare seeks to recover its nontaxable expenses[6] that are not accounted for in the above-referenced approximation of Lincare's attorneys' fees, including without limitation, approximately (1) $40,000.00 for computerized legal research (*e.g.*, "Westlaw") expenses,[7]

---

[5] Rule 54(d)(2)(B)(iii) requires parties seeking attorney's fees to "state the amount sought or provide a fair estimate of it."

[6] Lincare's "nontaxable costs" which make up its "[i]dentifiable, out-of-pocket expenses" are recoverable under Section 3730(d)(4) to a prevailing qui tam defendant. *See U.S. ex rel. Pugach v. M & T Mortgage Corp.*, 564 F. Supp. 2d 153, 165 (E.D.N.Y. 2008).

[7] Under Section 3730(d)(4), computerized electronic research costs are "compensable as attorney's fees" where, as here, the charges are billed separately from the attorneys' hourly rates. *Pugach*, 564 F. Supp. 2d at 165.

and (2) $ 70,000.00 for expert witness fees.[8]  Accordingly, Lincare seeks an approximate

total of $910,000.00 in the instant motion for its attorneys' fees and nontaxable expenses.[9]

## II.  STANDARD FOR AWARDING FEES UNDER § 3730(d)(4)

31 U.S.C. § 3730(d)(4) provides:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the ***defendant prevails in the action*** and the court finds that the claim of the person bringing the action was ***clearly frivolous, clearly vexatious, or brought primarily for the purpose of harassment***.

(Emphasis added).  A motion pursuant to Rule 54 is the proper procedural mechanism for

bringing a claim for attorneys' fees after a defendant prevails in an FCA litigation.  *See e.g.,*

*U.S. ex rel. Chabot*, 2008 WL at *1.

In determining whether to award attorneys' fees to a prevailing defendant in an FCA

action, "the court must determine whether the plaintiff's suit falls within ***any of the three***

[statutory] enumerated categories" – *i.e.* whether the relator's claim was "clearly frivolous,"

"clearly vexatious," or "brought primarily for the purposes of harassment."  *U.S. ex rel.*

*Cooper & Assocs., Inc. v. Bernard Hodes Group, Inc.*, 422 F. Supp. 2d 225, 237 (D.D.C.

2006) (emphasis added).  "Any one of these three conditions is sufficient for an award of

---

[8] District courts in the Eleventh Circuit have explicitly recognized that under 42 U.S.C. § 1988, which imposes a standard similar to Section 3730(d)(4), nonstatutory costs for expert witnesses and computerized legal research may be awarded to a defendant upon a finding that the defendant is entitled to attorneys' fees.  *See Cappelletti Brothers, Inc. v. Broward County*, 754 F. Supp. 197, 198 (S.D. Fla. 1991) (but declining to award such costs in that particular case because the prevailing defendant did not establish an entitlement to attorney's fees – "these nonstatutory costs are only recoverable if the party is entitled to attorney's fees").

[9] Federal Rule of Civil Procedure 54(d)(2)(A) dictates that "[a] claim for ***attorney's fees and related nontaxable expenses*** must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages" (emphasis added).  A motion pursuant to Rule 54(d) is the proper procedural mechanism for a claim of attorney's fees under 31 U.S.C. § 3730(d)(4).  *See U.S. ex rel. Chabot v. Westgate Homes, Inc.*, 2008 WL 360785 at *1 (M.D. Fla. Feb. 8, 2008); *U.S. ex rel. Jimenez v. Health Net Inc.*, 2005 WL 2002435, at *4 (D. Colo. Aug. 19, 2005).

attorney's fees." *U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 704-705 (2d Cir. 2001). Moreover, "[u]nder the proper circumstances, a single defect [in a claim] may merit a ruling of frivolousness or vexatiousness." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 208 Fed. Appx. 280, 283 (5th Cir. 2006). The Senate Committee that passed the 1986 amendments to the False Claims Act[10] articulated the policies underlying Section 3730(d)(4) and emphasized the importance of judicial enforcement:

> The Committee added this language in order *to create a strong disincentive and send a clear message* to those who might consider using the private enforcement provision of this Act for illegitimate purposes. *The Committee encourages courts to strictly apply this provision in frivolous or harassment suits* as well as any applicable sanctions available under the Federal Rules of Civil Procedure.

S. Rep. 99-345, at 29, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5294 (July 28, 1986).

## III.  ARGUMENTS SUPPORTING ENTITLEMENT

### A.    SAC was "Clearly Frivolous".

Under Section 3730(d)(4), a claim is considered frivolous "if it is utterly lacking in legal merit and evidentiary support." *Cooper & Assocs., Inc.*, 442 F. Supp. 2d at 238 (granting attorneys' fees because the suit was frivolous and vexatious and asserted "claims that fly in the face of the available evidence"); *see also U.S. ex rel. Martel v. Maxxam Inc.*, 211 F.3d 594, 2000 WL 329354, at *1 (5th Cir. 2000)(fee award was not an abuse of discretion where relator knew he was not the "original source" of the information yet still brought a frivolous claim). When determining whether to award attorneys' fees for a "frivolous" claim, the court must examine the allegations from an objective standpoint

---

[10] Under the 1986 Senate Committee Report, Section 3730(d)(4) was originally proposed as 31 U.S.C. § 3730(d)(6).

without regard to the relator's subjective intent. *Mikes*, 274 F.3d at 705 (holding district judge's award of fees was "fully justified" because relator's allegations were "bereft of any objective factual support"). Therefore, while the prior dealings between Lincare and Relator establish that instant action was brought in bad faith, such a finding is not a prerequisite to an award of attorneys' fees on the basis that the action was "clearly frivolous".

Although case law is relatively limited regarding the precise standards applicable to Section 3730(d)(4), cases interpreting claims for attorneys' fees under 42 U.S.C. § 1988 are instructive. *Id.* (noting that "the standard of 3730(d)(4) is analogous to that used for claims for attorneys' fees brought under 42 U.S.C. § 1988"); *Cooper & Assocs., Inc.*, 442 F. Supp. 2d at 238; *see also* S. Rep. 99-345 at 29 (noting that under Section 3730(d)(4), a prevailing defendant may be awarded fees "if the court finds that the private plaintiff's action was 'clearly frivolous vexatious, or brought for purposes of harassment.' This standard reflects that which is found in section 1988 of the Civil Rights Attorney's Fees Awards Act of 1976"). Under 42 U.S.C. § 1988, it is well established that "a prevailing defendant is entitled to recover attorney's fees if 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Baker v. Alderman*, 158 F.3d 516, 524-525 (11th Cir. 1998)(district court properly analyzed the § 1988 factors in awarding fees)(citations omitted). "Cases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed. R. Civ. P. 41(b) motion for involuntary dismissal." *Sullivan v. Sch. Bd. Of Pinellas County*, 773

F. 2d 1182, 1189 (11th Cir. 1985) *disapproved of on unrelated grounds*, 747 F. Supp. 1446.[11]
Additionally, the Court should consider the following factors, frequently referred to as the *Sullivan* factors, when analyzing whether to award fees: "'(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Id.*; *see also Turner v. Sunguard Bus. Sys., Inc.*, 91 F. 3d 1418 (11th Cir. 1996)(affirming the district court's award of fees after a review of the *Sullivan* factors). The *Sullivan* factors are still considered when awarding fees under § 1988. *See e.g., George v. Orange County Corr. Dept.*, 2007 WL 737569, at *2 (M.D. Fla. Mar. 7, 2007) (factors revealed claim was frivolous as a matter of law because evidence sufficient to support the claim was not presented). These factors are considered to be "guidelines – not hard and fast rules." *El Shahawy v. Lee*, 1999 WL 33919538, at *5 (M.D. Fla. Apr. 23, 1999). Moreover, a "finding of actual bad faith constitutes a basis for an attorney's fees award regardless of the *Sullivan* factors." *Turner*, 91 F. 3d at 1422, n 6. Indeed, "determinations regarding frivolity are to be made on a case-by-case basis." *El Shahawy*, 1999 WL at *5.

### 1) *Sullivan* Factors Support Finding of Frivolity.

As a threshold matter, Lincare obtained summary judgment, placing this case in the group of cases where "findings of 'frivolity'" are typically sustained. Moreover, each of the three *Sullivan* factors supports a finding of frivolity in the instant case. First, this Court's Order granting Lincare's Motion for Summary Judgment made clear that Relator failed to

---

[11] "In other words, the district court must focus on the question of whether the case is seriously lacking in arguable merit." *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002).

establish a *prima facie* case on Count I of the SAC.[12] The Relator's claims against Lincare were little more than a compilation of vague allegations and innuendo with absolutely no evidentiary support. The fact that Count I of Relator's SAC survived a motion to dismiss is of no consequence to the determination of whether Relator "established" a *prima facie* case. Indeed, this Court has found the first factor to "weigh[] very strongly in favor of a fee award" in cases which survive even summary judgment ("by the narrowest of margins") but are decided on directed verdict. *Id.* at *6 ("Plaintiff herein misapprehends the plain words of *Sullivan* when he asserts that the fact that his claims survived a motion for summary judgment means that he *established* a *prima facie* case; it does not") (emphasis in original).[13] In this case, Count I of the SAC survived a motion to dismiss only by alleging examples of fraud that were not supported by the law or the facts and Count II was dismissed.[14] Thereafter, Lincare obtained a summary judgment on Count I. Accordingly, Relator failed to establish a *prima facie* case and the first *Sullivan* factor weighs in favor of a fee award.

The second *Sullivan* factor – whether the defendant offered to settle – also supports a finding of frivolity in this case. From the inception of this litigation Lincare has vigorously disputed that it has *any* liability to Relator and, therefore, Lincare never made any firm offers

---

[12] In Count II of the SAC, Relator attempted to assert a claim for a violation of the False Claims Act based on violations of the Anti-Kickback Act, 42 U.S.C. § 1320a-7b. This Court dismissed Count II for failure to state a claim upon which relief could be granted. Order (Feb. 5, 2008) (emphasis added) (Dkt. 86). Without question, therefore, Count II of the SAC failed to establish a *prima facie* case.

[13] *See also Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (noting that "'[a]lthough in some instances a frivolous claim will be quickly revealed as such, it may sometimes be necessary for defendants to 'blow away the smoke screens the plaintiffs have thrown up' before defendants may prevail.' . . . This is all the more true when plaintiffs assert such a complex [conspiracy] claim as here.") (citations omitted).

[14] Like in *El Shahawy*, "the only thread that could be found to draw ragged elements [of a cause of action] together into some vague semblance of the alleged conspiracy was rank conjecture." *El Shahawy*, 1999 WL 33919538, at *8.

to settle this matter.[15] Lincare's participation in the court-ordered mediation does not affect this factor, even if an offer had been made, because offers made during a party's good faith participation in court-ordered mediation do not necessitate a finding against awarding attorneys' fees. *El Shahawy*, 1999 WL at *7 ("any offer made by the Defendants was made during the course of Court-ordered mediation, and thus should not be weighed so heavily against Defendants who participated therein in good faith. ***In any event, the Court concludes that this factor weighs more in favor of a fee award than against one***"). Accordingly, the second *Sullivan* factor favors an award of fees in Lincare's favor.

The third *Sullivan* factor – whether the trial court dismissed the case prior to trial or held a "full-blown trial on the merits" – clearly favors Lincare's position and requires little analysis. No trial was held in this case. Instead, the Court dismissed Count II on a Motion to Dismiss (Dkt. 86) for failure to state a claim. Count I was subsequently resolved on Summary Judgment and the Court held that Relator failed to "raise a genuine issue of material fact as to Lincare's liability . . .." Order at 27 (Jan. 23, 2009). Clearly, this Court did not hold a "full-blown trial on the merits." Accordingly, this factor clearly weighs in favor of a fee award.

In addition to the *Sullivan* factors considered above, this Court has noted that "[i]n the cases in which we have sustained findings of frivolity [under Section 1988], plaintiffs have typically failed to 'introduce any evidence to support their claims.'" *George*, 2007 WL 737569, at *2 (citations omitted).[16] Such a statement echoes the sentiment of this Court's

---

[15] Lincare did participate in good faith in two separate court-ordered mediations.

[16] Similarly, this Court has also noted that "as a general principle . . . frivolous cases were typically those in which a verdict had been directed in favor of the defense at the close of the plaintiff's case-in-chief." *El Shahawy*, 1999 WL 33919538, at *5.

Order granting Lincare's Motion for Summary Judgment.[17]  Moreover, Courts have found

claims to be "clearly frivolous" under Section 3730(d)(4), where the relator's allegations as

here were devoid of factual support and there was evidence of a litigious history between the

relator and defendant. *See U.S. ex rel. Minna Ree Winer Children's Class Trust v. Regions*

*Bank of La.*, 1996 WL 339993, at *1 (E.D. La. June 18, 1996):

> To summarize, however, the Court can only characterize relator's complaints of conspiracy and fraud against defendants . . . as 'fact-starved.' **The Court found the instant False Claims Act litigation particularly worrisome in light of the litigious history of its instigators. In the Court's view, if Section 3730(d)(4) has any teeth at all, it should preclude a 'fishing expedition' by disappointed litigators** – the qui tam provisions most obviously are not intended as a consolation prize.

*Id.* (emphasis added).  Like the instigators in *Minna Ree Winer Children's Class Trust*,

Relator's SAC is also "worrisome" in light of his litigious history with Lincare and admitted

motives for pursuing the investigation.[18]

Relator's claim was "clearly frivolous" from inception.  Therefore, Lincare is entitled

to recover its fees pursuant to §3730(d)(4).

### 2) Relator's Continued Prosecution in Light of Existing Evidence also Establishes Frivolity.

Moreover, the act of continuing to maintain a claim after the evidence reveals it to be

meritless can also subject a relator to attorneys' fees under Section 3730(d)(4).  *See, e.g.,*

*Cooper & Assocs., Inc.*, 442 F. Supp. 2d at 239 (affirming an award of attorneys' fees where

the relator "lodg[ed] claims that fly in the face of the available evidence"); *see also Minna*

---

[17] *See supra* n. 2 (discussing the Court's specific findings as to Relator's lack of evidence).
[18] As discussed in detail *infra* pages 20-21, Relator admitted that the FBI raid of the former BMS centers and Lincare's subsequent attempt to rescind the parties' contract caused him to begin his "investigation" of Lincare. Bane Dep. 45:16-46:9, Ex. A.

*Ree Winer Children's Class Trust v. Regions Bank of La.*, 110 F.3d 794, 1997 WL 119971, at

*3 (5th Cir. 1997) ("Given the fact that the [relator] proceeded against the [defendants]

without any evidence sufficient to create a genuine issue of material fact, the district court's

award of attorney's fees is appropriate"). Even if Relator is given the benefit of the doubt --

and the Court believes that it was reasonable to expect that discovery would substantiate his

allegations[19] -- he should have, ***and was legally required to,*** voluntarily dismiss his claims

against Lincare after discovery revealed them meritless. *See U.S. ex rel. Haycock v. Hughes*

*Aircraft Co.*, 99 F.3d 1148, 1996 WL 612680, at *1 (9th Cir. 1996) (affirming an award of

attorneys' fees under Section 3730(d)(4) and stating that the "standard [for frivolousness] is

met if 'the plaintiff continued to litigate after' his claim 'clearly became' groundless or

without foundation"); *Jerelds*, 194 F. Supp. 2d at 1310 ("a plaintiff may be assessed fees if

he continues to litigate a once colorable claim after it becomes obvious that the claim is

frivolous, unreasonable, or groundless"). Instead, Relator pressed forward with his SAC,

causing Lincare to unnecessarily expend attorneys' fees defending itself against the baseless

allegations.

This Court gave Relator multiple opportunities to restate his cause of action and the

Relator actually filed three different versions of this pleading. The culmination of these

efforts resulted in a meritless pleading. Thereafter, discovery revealed several of the key

allegations, upon which this Court relied in denying Lincare's Motion to Dismiss the SAC, to

be entirely untrue. For example, in paragraph 22 of the SAC Relator contended that as part

---

[19] Even this position would arguably be insufficient to maintain a valid cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (noting that a complaint must at least "raise a ***reasonable*** expectation that discovery will reveal evidence") (emphasis added).

of his "investigation" he contacted doctors,[20] including doctor Christopher Berchelmann, from whom he allegedly learned information germane to his claims against Lincare. Magistrate Mark A. Pizzo relied on this allegation in denying Lincare's Motion to Dismiss: "On his own initiative, *[Relator] investigated the matter further by contacting physicians*, ex-Lincare employees, former BMS employees who worked for Lincare after the sale, and his former patients who were now serviced by Lincare. *From all this, he claims he has direct and independent knowledge* of 'the allegations set forth' in his compliant." R&R at 7 (Nov. 30, 2007) (Dkt. 65) (emphasis added) *see also* Order at 2 (Feb. 5, 2008) (adopting Magistrate Pizzo's findings with regard to Count I). The doctors' depositions established that they could not have been part of Relator's investigation, as alleged. In fact, the doctors had no independent knowledge of the allegations in the SAC and did not provide any information to Relator. Two of the four doctors referenced in the SAC admitted that it was the *Relator who provided them information*:

> Q:    So as I appreciate your description of paragraph 22, you were actually provided information by Mr. Bane or someone else?
>
> A:    At some point, yes.
>
> Q:    Okay. What information, if any, did you provide to Mr. Bane or his attorneys?
>
> A:    Nothing.

Berchelmann Dep. 77:10 – 21 (Apr. 22, 2008), Ex. B.

> Q:    Who said [a medically unnecessary or redundant test] was ever done?

---

[20] The SAC specifically identifies four doctors who purportedly were part of Relator's investigation -- Dr. Christopher Berchelmann, Dr. Steve Smith, Dr. Howard Diener and Dr. John Swisher. SAC ¶ 28.

A: That's what –

Q: Mr. Bane told you?

A: Correct.

Q: So you don't have any independent knowledge that it was ever done, do you?

A: No, sir, I do not.

Smith Dep. 21:1 – 7 (Apr. 22, 2008), Ex. F.

The other two doctors either had no relevant information to share, or in fact, *never even spoke with Relator regarding the alleged "investigation"*:

Q: Do you have any personal knowledge that Lincare was involved in the creation of these forms, number 2 and 3?

A: I do not.

********************

Q: The forms, Exhibits 2 and 3, talk about clinical evaluation. And I'd asked you earlier if you had any knowledge that Lincare was arranging in any way to conduct the pulse oximetry tests. Do you have any knowledge that Lincare was arranging to have a clinical evaluation conducted?

A: I do not.

Diener Dep. I 63:12-14; 66:10 – 16 (Apr. 23, 2008), Ex. C.

Q: Were you one of the doctors that Mr. Bane spoke with in his investigation?

A: No.

> Q:     Have you spoken to anyone purporting to work with,
>        represent, be attorney for, an investigator for Mr. Bane
>        in connection with his investigation?
>
> A:     No.

Swisher Dep. 26:4-10 (May 23, 2008), Ex. G.

For instance, in paragraphs 27 and 29 of the SAC, Relator attempted to establish that Lincare caused the submission of false claims, contending that his alleged investigation revealed that Lincare deceived physicians into authorizing medically unnecessary tests. This Court relied on these allegations in denying Lincare's Motion to Dismiss, noting that "Bane has alerted the Defendants as to their precise misconduct – the routine use of the O2 referral form to deceive physicians into authorizing medically unnecessary tests thereby supporting a fraudulent scheme to bill Medicare." R & R at 14; *see also* Order at 2 (Feb. 5, 2008) (adopting Magistrate Pizzo's findings with regard to Count I). The evidence, however, revealed that ***none of the physicians were aware of any specific unnecessary or redundant medical procedures relevant to the instant litigation.***[21]

> Q:     Are you aware of any specific patient that you ordered a
>        medically unnecessary procedure on?
>
> A:     No, I'm not.
>
> Q:     Well, the allegation here in Paragraph 29 says that you
>        were ordering services that were medically unnecessary
>        and redundant; but you can't tell me what patient that

---

[21] Dr. Diener testified that he was aware of one O2 form for one patient – James Stearns – that, in his opinion, authorized "medically unnecessary" tests. This isolated mistake, however, was not a false claim because it was brought to Breathe Easy's attention and Breathe Easy refunded the Medicare charges. *See* Diener Dep. II 86:5-22 (May 23, 2008), Ex. D. Further, the James Stearns incident occurred approximately 19 months after the original complaint was filed and almost two months after the operative SAC was filed. Therefore, the Stearns incident was not even relevant to the litigation. *See* Order Granting Lincare's Renewed Motion for Protective Order (Aug. 27, 2008) (Dkt. 184).

> would apply to or what procedure and what date or time or anything?
>
> A:   No.

Berchelmann Dep. 111:17-112:2, Ex. B. *See also* Berchelmann Dep. 92:5-93:12, Ex. B.

> Q:   Now, let me ask you in a global sense on 29. Are you aware as you sit here today, April 22nd, 2008, of any medically unnecessary or redundant tests, evaluations or assessments being done on any of your patients?
>
> A:   Right now, no.
>
> Q:   And you've made an investigation of that?
>
> A:   Yes.
>
>           ****************
>
> Q:   So you're not hiding the ball; you've looked for it, and you can't find it?
>
> A:   Correct.

Smith Dep. 78:9-79:8, Ex. F.

> Q:   As you sit here today, you are not aware of any medically unnecessary or redundant tests that have been performed on your patients; is that correct?
>
> A:   That's correct.

Swisher Dep. 30:1-4, Ex. G.

Discovery revealed the falsity of other allegations contained in the SAC. In paragraphs 19 - 20 of the SAC Relator alleges that he gained direct and insider-type knowledge about Lincare's alleged intent to defraud the Government during due diligence meetings he had with Lincare employees Phil Phenis, Lori DeMello, and Lori Miller. Discovery revealed, however, that Relator's alleged knowledge was nothing more than the Relator's own hunch and

innuendo. Relator testified that *he asked* Lincare employees Phenis, DeMello, and Miller about the "clinical evaluations" that Breathe Easy was conducting. Bane Dep. 21:9-30:4, Ex. A. In response to this question according to Relator, Phenis and Miller said *nothing* and DeMello said that *she did not know* and that Lincare had no control over what the labs did. Bane Dep. 24:23-25:8; 25:23-26:13, Ex. A. Relator testified that it was this exchange, the only basis for his conspiracy allegations in the SAC against Lincare, that led him to conclude that a conspiracy existed because he thought that DeMello was lying. Relator's testimony regarding this exchange demonstrates that he clearly knew, without the need for any discovery, that the allegations in his SAC were baseless.

As established above, Relator's claims against Lincare were clearly frivolous from inception. At the very least, Relator was aware of his claims' frivolity after the doctors' depositions were conducted in April and May 2008. Relator had an obligation to dismiss Lincare from this lawsuit once discovery revealed his claims to be unsupported. Relator's failure to do so justifies an award of fees. Therefore, Lincare is entitled to an award of attorneys' fees under Section 3730(d)(4).

**B.      Relator's FCA Action Against Lincare Was "Clearly Vexatious".**

Appellate courts have affirmed awards of attorneys' fees under Section 3730(d)(4) upon a finding that "the 'ultimate goal' of the suit was to 'vex and harass the defendants.'" *Minna Ree Winer Children's Class Trust.*, 110 F.3d 794, 1997 WL 119971, at *3. "A claim is vexatious when the plaintiff brings the action for an improper purpose, such as to annoy or harass the defendant." *Bain*, 208 Fed. Appx. at 283. Indeed,

> [t]he distinction between vexatious conduct and harassment stems from the intentions of the plaintiff. Although the word 'harassment' suggests bad

faith... the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him.

*Cooper,* 422 F. Supp. 2d at 238 (citations omitted).

Improper purpose or motive may be established by circumstantial evidence. *McLaughlin v. Western Cas. & Sur. Co.,* 603 F. Supp. 978 (S.D. Ala. 1985) (awarding attorneys' fees under Rule 11 upon a finding, based on circumstantial evidence, that counsel for the defendant had an improper motive in filing a removal petition).[22] Further, courts have recognized that a Relator's act of maintaining numerous claims against a defendant is probative of a finding of vexatiousness or harassment. *See, e.g., Bain,* 208 Fed. Appx. at 283 (noting that "[t]he [district] court further determined that 'it is probable that the amended complaint was also filed to harass the defendant considering the number of other claims the plaintiff has filed against the defendant"). Indeed, courts have imposed sanctions against *qui tam* relators who cloak personal vendettas as FCA claims. *See U.S. ex rel. Herbert v. Nat'l Acad. of Sci.,* 1992 WL 247587, at *9 (D.D.C. Sept. 15, 1992):

> Here, the Plaintiff has done little more than dress up his personal grievance against the [defendant] as a qui tam claim vindicating the interests of the U.S. government. This Court's fee shifting power both under [Section 3730(d)(4)] and Rule 11 demands that this type of abuse be prevented. The Plaintiff, therefore, will be required to pay the Defendant's reasonable attorneys' fees and costs.

Relator's claim *by his own admission* was motivated not by a desire to uncover a purported fraud on the Government, but was primarily motivated by his contractual dispute with Lincare and his own criminal problems. He like the Relator in *Herbert* merely attempts

---

[22] The standards governing the imposition of sanctions under Rule 11 apply equally to the imposition of sanctions under Section 3730(d)(4). *See U.S. ex rel. Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir. 1996).

to "dress up" his aversion to Lincare, resulting from the contractual dispute, as a *qui tam* claim. Twenty-two days after Relator sold his company, BMS, to Lincare the FBI raided the former BMS centers as part of its investigation of Relator and his activities at BMS. Bane Dep. 256:8-15, Ex. A; Elston Dep. 58:21-59:4, Ex. E. The FBI raid set off a contractual dispute between Realtor and Lincare and ultimately triggered the Relator's three separate lawsuits against Lincare, the instant action, the *Life Care Qui Tam*, and the Contract Action. Relator admitted that the FBI raid and the resulting contractual dispute caused him to begin "investigating" Lincare. Bane Dep. 45:16 – 46:12, Ex. A.

Relator did not begin his "investigation" of Lincare until after the FBI raid and the contractual dispute between the two parties arose:

> Q: I appreciate the – the event that got you started on the investigation was the FBI raid?
>
> A: Yes.
>
> Q: And then Lincare tried to rescind the deal?
>
> A: Well, you talked about it.
>
> Q: Right. Lincare asked you to take the company back?
>
> A: Yes, sir.
>
> Q: And you said no?
>
> A: Not exactly like that.
>
> Q: Okay. Well, it didn't happen.
>
> A: Didn't happen.
>
> Q: Right. And then those events got you started on your investigation that we see referenced in [paragraph] 21 [of the SAC]?

A:     Yes.

Q:     Okay. So prior to the FBI raid, prior to Lincare's attempts to negotiate a rescission, you weren't investigating Lincare. Is that correct?

A:     That's correct.

Bane Dep. 45:16 – 46:9, Ex. A. This timeline is no coincidence. To the contrary, Relator's fervent testimony during his deposition is very telling as to his underlying vindictive motivations:

Q:     Well, you think Lincare owes you about $2 million, don't you?

A:     They do owe me, not think, they do. They do. That was the deal, that was the contract. They do owe me $2 million.

Bane Dep. 324:24 – 325:3, Ex. A.

Further, circumstantial evidence of the contractual dispute between Lincare and Relator and the criminal investigation of Relator, also leads to the inevitable conclusion that Relator initiated the instant action for the improper purpose of "getting back" at Lincare, or in an attempt to gain leverage in the contractual dispute and/or with the Government's investigation. Relator brought multiple *qui tam* actions against Lincare based on the same frivolous theory. Lincare was dismissed from both claims. In both cases, the Relator stopped prosecuting the case against the other defendants shortly after Lincare was dismissed from the case.[23] Relator's first action in instant case after Lincare's dismissal was to

---

[23] In the instant case the prosecution was concluded a mere four days after the entry of the Order granting Lincare's Motion for Summary Judgment. In the *Life Care* Action the Relator simply did not file any opposition to the Magistrate's R&R dismissing Life Care from the case. (*Life Care* Dkt. 100).

immediately drop Breathe Easy, the lab that was purportedly the center of the conspiracy, from the case. This action reveals Relator's true intent and establishes that the *Life Care* Action, the Contract Action, and the instant action were all motivated by Relator's personal vendetta against Lincare.

Additionally, after the extensive discovery conducted in this case, this Court's finding that "Relator has failed to raise a genuine issue of material fact as to Lincare's liability" proves that Relator's claims were never meritorious. *See* Order at 27. Accordingly, Lincare is entitled to an award of its fees under Section 3730(d)(4) for its defense of Relator's vexatious claims.

## C.     Relator's FCA Action Was an Attempt to Harass Lincare.

As indicated above, the distinguishing characteristic between a vexatious claim and a claim promulgated to harass a party is the existence of bad faith. *Cooper,* 422 F. Supp. 2d at 238 (citations omitted). "[A] plaintiff need not have acted in bad faith in order to be liable for fees, although if he did, 'there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.'" *Hutchinson*, 994 F.2d at 1080. In this matter, Relator's underlying malevolent motives stemming from his prior contractual dispute with Lincare, as well as his utter lack of evidentiary support for his claims against Lincare, suggest that Relator's action was not only vexatious and frivolous, but was also aimed at harassing Lincare. Relator's decision to maintain his claims against Lincare after discovery revealed that there was no basis for his allegations evidences bad faith. *See generally Hutchinson*, 994 F.2d 1076 (granting attorneys' fees under Section 1988 where the court recognized "plaintiffs' motives of revenge in bringing the suit," where plaintiffs asserted a

broad conspiracy claim that "forced for several years, and at great expense, [defendants] to fend off a claim that proved to be factually baseless"); *Tuazon v. HSBC Mortgage Serv., Inc.*, 2007 WL 1960619 (W.D. Wash. July 2, 2007) (the evidence "point[ed] to the conclusion that this lawsuit has no basis in fact or law").

In this case, although Relator provided a response to Lincare's motion for summary judgment, the evidence clearly establishes that there was no basis in law or fact for his claims against Lincare. Moreover, Relator's prior contractual dispute with Lincare, which precipitated the filing of the instant lawsuit, coupled with the fact that Relator has adamantly testified that he believes Lincare owes him money suggests that this *qui tam* action was brought in bad faith and with the purpose to harass Lincare. Accordingly, Lincare is entitled to an award of attorneys' fees under Section 3730(d)(4).

## IV. CONCLUSION.

Relator's own testimony combined with circumstantial evidence from the court docket in this case and the two other matters brought by Relator against Lincare establish that Relator's claims against Lincare were frivolous, clearly vexatious, and brought primarily for the purpose of harassment. Relator's misuse of the FCA as a means for pursuing his own personal vendetta against Lincare must be sanctioned. Accordingly, Lincare, the prevailing party in the instant *qui tam* action, is entitled to an award of attorneys' fees and nontaxable expenses against Relator pursuant to §3730(d)(4).

WHEREFORE in accordance with Rule 54(d)(2)(C), Lincare Holdings Inc. and Lincare Inc. respectfully request that this Court enter an Order:

a)     declaring that Lincare is entitled to recover the attorneys' fees and nontaxable expenses incurred in the defense of the instant lawsuit from Relator, Ben Bane;

b)     directing a timetable for the submission of documentary evidence supporting the appropriate amount of such award;

c)     scheduling an evidentiary hearing on the amount of such fee award, pursuant to Rule 54(d)(2)(C); and

d)     granting such further relief as this Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g) counsel for Lincare conferred with counsel for the Relator on February 13, 2009 in a good faith effort to resolve the issues raised in this Motion. Counsel for Relator indicated that Relator objects to the relief requested in this Motion.

Respectfully submitted,

Lawrence P. Ingram (FBN 855510)
E-mail: ingraml@phelps.com
Donald H. Whittemore (FBN 502073)
E-mail: don.whittemore@phelps.com
Jessica Kirkwood Alley (FBN 177059)
E-mail: alleyj@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (813) 472-7550
Fax: (813) 472-7570
Attorneys for Lincare Holdings Inc. and
Lincare Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Kevin J. Darken, Esquire
Cohen, Jayson & Foster
201 East Kennedy Blvd., Suite 1000
Tampa, FL 33602

Lacy R. Harwell, Jr., Esquire
Assistant United States Attorney
400 North Tampa Street, Suite 3200
Tampa, FL 33602

Stephen V. Iglesias, Esq.
Law Office of Stephen V. Iglesias, P.A.
One Urban Centre
4830 W. Kennedy Blvd., Suite 575
Tampa, FL 33609

_____
Attorney

- 25 -